## DURR v. WINN.

### No. 6093.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Application for Rehearing Dismissed March 6, 1940.

J. D. Rusca, of Natchitoches, for appellant.

D. J. Hyams, of Natchitoches, for appellee.

TALIAFERRO, Judge.

D. H. Veal, then a resident of Natchitoches Parish, prior to the year 1930, held and owned two notes of J. D. Durr, plaintiff herein, for $466 and $964.34, respectively, on which J. I. Winn, also a resident of said parish, was surety. The notes were reduced to judgment in different suits in the District Court of Natchitoches Parish. Both judgments were duly registered in the mortgage records. Winn, while admitting secondary liability on the notes, at his request, was not impleaded in the suits. All rights as against him were reserved.

In the early part of May, 1930, Veal and another of Durr's judgment creditors caused executions to issue on their judgments and certain real estate of his was seized thereunder by the sheriff. Durr was then in financial distress. At his request, a meeting of these judgment creditors and others interested was held in the office of Rusca and Cunningham, attorneys for Veal, in the City of Natchitoches, on May 13, 1930, for the purpose and in the hope that some mutually satisfactory plan could be evolved whereby the seizures would be released and Durr enabled to eventually pay off the judgments. Durr and his son, J. I. Winn, and a representative of the other judgment creditor were present at the meeting; also Mr. Rusca, as the representative of Veal. An agreement was reached whereby Durr was given nearly three years in which to pay the judgments by installments. The agree-

ment was reduced to writing and signed by all present. Rusca signed for Veal, after advising him of the details of the agreement and having his consent so to do.

On May 17, 1930, Winn having satisfied his liability to Veal as surety on Durr's notes, Veal transferred both judgments to him by written instrument prepared by Mr. Rusca and executed in his office. This instrument was promptly registered in the mortgage records of the parish.

Thereafter, in the year 1932, J. I. Winn, by written instrument, transferred the judgments to A. E. Winn. The act was recorded in the conveyance records of the parish. A. E. Winn subsequently assigned the judgments to his son, A. E. Winn Jr., defendant in the present suit.

Durr defaulted on his obligations under the agreement of May 13, 1930. He paid none of the installments therein stipulated.

On May 7, 1935, executions, at the instance of Mr. Rusca, attorney for defendant herein, were issued on the judgments, whereunder the sheriff seized Durr's farm property in Natchitoches Parish. This seizure provoked the present injunction suit.

After alleging the prior existence of the judgments, issuance of said writs and seizure thereunder, plaintiff, for a cause of action, says:

"Your petitioner now shows that the said judgments have been fully compromised, settled and paid, and have been duly canceled upon the mortgage records of the Parish of Natchitoches, Louisiana, upon authority of the heirs of D. H. Veal, acting through their attorney as shown by the recordation of said cancellation of date October 29, 1934, duly noted upon the record of the said judgments in Book 151, page 125 and Book 144, page 248 of the records of Natchitoches Parish, Louisiana.

"Your petitioner now shows that the facts and circumstances surrounding the payment and satisfaction of the said judgments are as follows:—

"A. That your petitioner was heavily in debt on or about June 1st, 1934, and being desirous of refinancing his mortgages and indebtedness through the Federal Land Bank and Land Bank Commissioner, made application for a loan through the proper agency of said Federal Land Bank and Land Bank Commissioner; that there rested upon your petitioner's property, above described, a vendor's lien and mortgage in the sum of Eight Thousand Five Hundred ($8,500.00) Dollars, held by Gladys Glover of Natchitoches, Louisiana, also the two judgments above described and other indebtedness to Julius Aaron and Son, and other parties.

"B. That the local representative of the Federal Land Bank of New Orleans, acting with your petitioner, communicated with the creditors of your petitioner, including the heirs of D. H. Veal, who was the judgment creditor of record in the two judgments above described and upon which execution has been issued; that your petitioner, after extended negotiations, obtained an agreement from the heirs of D. H. Veal, through their attorneys, Messrs. Stephens and Gahagan of Natchitoches, Louisiana, to accept the sum of Two Hundred Eighty-Seven ($287.00) Dollars in full and final settlement and compromise of the two judgments now being executed upon.

"C. That after agreements were obtained from all the creditors, the loan was closed and the proceeds were distributed among the creditors in proportion, as agreed upon, including the estate of D. H. Veal, and at that time or about that time, the necessary authority was given to B. S. Swett, Clerk of the Tenth District Court and Ex-Officio Recorder of the Parish of Natchitoches, Louisiana, to cancel the said judgments; said authority having been given in writing by Russell E. Gahagan, Esq., he being a member of the law firm of Stephens & Gahagan, and B. S. Swett, Clerk of the Tenth District Court and Ex-Officio Recorder of the Parish of Natchitoches, Louisiana being the proper officer to make such cancellations.

"Your petitioner now shows that as far as he knew, not only before the beginning of the negotiations for the refinancing of his debts, but during the same and for months thereafter, D. H. Veal, through his heirs, was still the owner of the two judgments upon which execution has been issued. And, that your petitioner was never notified of any transfer of the said judgments at any time whatsoever until about the first day of May, 1935, when he was called upon by plaintiff in execution or his representative to pay them; that your petitioner had no actual knowledge of a transfer of said judgments and that

your petitioner and the representatives of the Federal Land Bank of New Orleans and Land Bank Commissioner dealt with the heirs of D. H. Veal in good faith."

Answering the petition, defendant specially denies that the heirs of D. H. Veal, who died on February 1, 1931, ever owned or had any interest in the judgments, and, therefore, denies that R. E. Gahagan, as attorney or otherwise, had any right or authority to accept payment of the judgments in whole or part from anyone; that he was wholly without legal warrant to authorize the cancellation of the judgments from the mortgage records and that such cancellation at his instance was fraudulent and ineffective as against this defendant. Defendant further pleads: "Avers that R. E. Gahagan, assuming to act as attorney for the heirs of D. H. Veal, did give the Clerk of Court an order to cancel said judgments and that the Clerk of Court and Ex-Officio Recorder, acting through one of his deputies, did, through error and inadvertence, cancel said judgments, but that when the matter was subsequently called to his attention, he admitted his error and erased the erroneous cancellations. That the said R. E. Gahagan did not represent the heirs of D. H. Veal; that said heirs had no knowledge whatever that he had assumed to act for them, for they well knew their father had sold and transferred said judgments as aforesaid."

Defendant also affirmatively avers that Durr had actual knowledge that Veal had transferred the judgments to J. I. Winn, and, in addition, avers that he was impressed with constructive knowledge of the fact from the registry of the act of transfer; and, therefore, was in bad faith and wholly without legal right to deal with said Gahagan in the purported capacity of attorney for the heirs of D. H. Veal, with respect to the cancellation of the judgments.

A preliminary writ of injunction at plaintiff's instance issued on hearing. It was maintained and made permanent after trial on the merits. Trial was not had until July 26, 1939, four years after the suit was filed. This unreasonable delay, the record convinces us, may not properly be ascribed to lack of effort for earlier trial on the part of defendant's counsel. Defendant appealed.

One simple issue is tendered by the pleadings, and that is whether plaintiff knew Veal transferred these judgments to J. I. Winn on May 17, 1930, or on any other date. If Durr had knowledge of such transfer, surely he had no right to deal with the heirs of Veal or their attorney in settling the judgments. Durr says he had no such knowledge. We are impelled to the conclusion, after a careful study of the record, that in this position he is palpably in error. The record is replete with evidence of a convincing nature that he did know that these judgments had been transferred to J. I. Winn and, at different times, were owned by A. E. Winn and his son, the defendant herein.

On May 17, 1930, Mr. Rusca, acting as the attorney for J. I. Winn, wrote a letter to Durr, in which he enclosed a copy of the agreement signed by him and others four days prior, and also enclosed therewith a copy of the transfer of the judgment from Veal to Winn. This letter was received by Durr and he admits that the copy of the agreement was therein, but is hazy as to whether a copy of the transfer of the judgments was under the same cover.

J. I. Winn testified that he, personally, informed Durr that he had acquired the judgments from Veal and endeavored, personally, to induce Durr to make payments thereon in 1931, 1932 and 1933. He also testified that in one conference with Durr in 1934, in which the judgments were discussed, the amount thereof was then and there calculated and that he told Durr he would cooperate with him in his efforts to arrange settlement with his mortgage creditors. He also, about the same time, discussed the judgments with Durr's attorney and informed him of his ownership thereof, and of his position relative to cooperating with Durr in his efforts to adjust his indebtedness.

Mr. Rusca and Durr, during the year 1934, had several conferences with regard to the latter's financial condition and the progress he was making toward procuring a loan on his land from the Federal Land Bank sufficient to pay off his secured creditors. Rusca urged him to hasten the closing of the loan. In one conversation, Rusca informed him that since he had not succeeded in getting his creditors to agree on a satisfactory basis of settlement, that, as attorney for Winn, he would be forced to execute on the judgments he owned. Durr asked him to hold matters in abeyance for a while longer. The request was

66

granted. Other conversations on the subject were had between them. Mr Rusca gave the following testimony concerning the latter phases of the matter, to-wit: "* * * Just prior to September 24, 1934, Mr. Durr had advised me that he had reached an agreement with all of his creditors, and the matter would soon be settled. I subsequently found out that my information was erroneous and on the next occasion when I saw Mr. Durr, he informed me that he paid all creditors. I called at the clerk's office and found that his mortgage had been placed of record and the judgments involved had been canceled. Mr. A. E. Winn then instructed me to take such proceedings as I thought necessary to protect his interest and I prepared an application for Writs of Mandamus to have the cancellation removed."

The mandamus proceeding referred to was promptly filed. A plea of prematurity to the action was sustained by the court and the suit dismissed. Thereafter, on April 15, 1935, the clerk of court, realizing that the cancellation of the inscription of the judgments by him upon Gahagan's authority had been improvidently done, undertook to efface from his record said cancellation by making a notation thereon as follows: "This cancellation made through error." This entry was followed by the official signature of the clerk.

The record leaves no doubt of Durr's knowledge that Veal transferred the judgments to J. I. Winn in 1930; and, as a consequence, he knew that Veal's heirs had no interest therein when the cancellations were made. The record almost as conclusively convinces us that all persons having contact with Durr's financial affairs and the efforts then being made by him and in his behalf to reach an accord with his creditors, knew that Mr. Rusca was then representing the transferree of the judgments.

Neither Mr. Gahagan nor Durr's counsel testified in the case.

The clerk of court acted without due care and caution in cancelling the judgments in the mortgage record on the authority presented to him. His own records contained two different transfers of the judgments. The registry of such transfers was made during his official incumbency. Becoming convinced of his official error, he has done what he could to rectify the mistake.

Concerning the assignment of credits and other incorporeal rights, Article 2642 of the Civil Code says: "In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and transferree by the giving of the title."

Article 2643 thereof reads:

"The transferree is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place.

"The transferree may nevertheless become possessed by the acceptance of the transfer by the debtor in an authentic act."

In Geisenberger v. Cotton, 116 La. 651, 40 So. 929, it was specifically held that "An assignment of a judgment has no effect against third persons until notified to the debtor."

In Elgutter v. McCarty, La.App., 167 So. 461, this court considered and discussed the efficacy of an alleged transfer of a a judgment, and held that where agreed price of the transfer had been paid and the debtor notified of the transfer, that the transfer was complete. Lehman Dry Goods Company v. Lemoine, 129 La. 382-385, 56 So. 324, is cited.

As regards the form of transfer and the character of knowledge thereof by the judgment debtor, to effect, as to him, substitution of creditor, the law prescribes no sacramental form. Notice is notice. On this point in the early case of Gillett v. Landis et al., 17 La. 470, the court held: "There is no particular form required in giving notice of the transfer of a debt. It is sufficient if knowledge of the transfer is brought home to the debtor and that he knew his former creditor was divested of his rights to the debt assigned, and that such knowledge of the fact was derived from the transferree or his agent."

This decision has since been uniformly followed by the courts of this state.

The judgment in this case is manifestly incorrect. For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside, and there is now judgment for defendant, dissolving the writ of injunction, rejecting plaintiff's demand and dismissing his suit at his costs.

HAMITER, J., concurs in the decree, but disagrees with some of the above-stated conclusions of fact.

On Application for Rehearing.

PER CURIAM.

The above application for rehearing cannot be considered for the reason it was filed too late.